```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                          DALLAS DIVISION

AHF COMMUNITY DEVELOPMENT,      §
LLC,                            §
                                §
               Plaintiff,       §
                                § Civil Action No. 3:06-CV-1035-D
VS.                             §
                                §
THE CITY OF DALLAS, et al.,     §
                                §
               Defendants.      §
```

MEMORANDUM OPINION
AND ORDER

Plaintiff AHF Community Development, LLC ("AHF") moves under Fed. R. Civ. P. 26(b)(5)(B) for an *in camera* inspection of several documents that have been produced in discovery by defendants City of Dallas ("City"), Sergeant Preston Gilstrap ("Sergeant Gilstrap"), and Senior Police Corporal Richard Todd. AHF also moves for a determination that the documents are not subject to the attorney-client privilege and that AHF is entitled to retain possession of them. For the reasons that follow, the court grants the motion and holds that the documents in question either are not privileged under the attorney-client privilege or that defendants waived the privilege.

I

AHF brings this action alleging that the City and individual City officials engaged in harassment of tenants and other conduct unlawful under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, triggering a decline in occupancy at an AHF-owned

apartment complex and causing AHF to default on its bond indebtedness. During the deposition of Sergeant Gilstrap, he testified regarding several emails that he sent to or received from Jennifer Richie, Esquire ("Richie"), an Assistant City Attorney who was then a party-defendant.[1]

After the deposition, defendants notified AHF that certain documents about which Sergeant Gilstrap had been questioned were subject to a claim of privilege. They explained that these documents, along with others listed on privilege logs that had been provided to AHF, had been included inadvertently on a compact disc of electronic documents that the City had produced due to the City's conversion to a new litigation management software. Citing Rule 26(b)(5)(B), defendants requested that AHF return all the inadvertently produced documents and refrain from using or disclosing them. Responding to AHF's request that they identify the documents, defendants provided an updated privilege log that specified Bates numbers for all documents subject to a claim of privilege, including additional documents that defendants had discovered since their first notification. AHF responded that it disputed the claims of privilege as to certain documents listed on the updated privilege log. This motion followed. Pursuant to Rule 26(b)(5)(B), AHF has submitted under seal the documents that it

---

[1] Pursuant to the parties' stipulation, the court dismissed the claims against Richie without prejudice on September 29, 2008.

maintains are not privileged.

Although in its motion AHF discusses two privileges in addition to the attorney-client privilege, defendants in their response rely only on the attorney-client privilege. Moreover, defendants disclaim any privilege as to certain of the documents that AHF has submitted under seal. Accordingly, the court will consider only the attorney-client privilege, and waiver of the privilege, as to the documents that remain in dispute: COD-ATTJ-01979 to COD-ATTJ-01981, COD-ATTJ-01987 to COD-ATTJ-01988, COD-ATTJ-01996 to COD-ATTJ-01998, COD-ATTJ-03617, COD-ATTJ-03619 to COD-ATTJ-03620, COD-ATTJ-01954 (Exhibit 6), COD-ATTJ-01867 (Exhibit 19), COD-ATTJ-01997 (Exhibit 27), COD-ATTJ-01976 to COD-ATTJ-01977 (Exhibit 30), COD-ATTJ-01941 (Exhibit 32), COD-ATTJ-01938 (Exhibit 33), COD-ATTJ-01837 (Exhibit 34), COD-ATTJ-01105 to COD-ATTJ-01106 (Exhibit 37).

II

The parties raise two controlling issues: whether the documents in question are privileged under the attorney-client privilege, and, if they are, whether defendants waived the privilege. In its motion, AHF discusses not only the attorney-client privilege but also two other privileges. The court will address first whether the disputed documents are privileged under the attorney-client privilege.

A

The attorney-client privilege exists to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).[2] To achieve this goal, the privilege protects from disclosure "communications from the client to the attorney made in confidence for the purpose of obtaining legal advice." *Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985). "'It shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney.'" *Aspex Eyewear, Inc.* v. *E'Lite Optik, Inc.*, 2002 WL 1592606, at *2 (N.D. Tex. July 17, 2002) (Fitzwater, J.) (quoting *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994)). The attorney-client privilege applies not only to communications with outside counsel but also to communications between a client corporation and its inside counsel. *United States v. Mobil Corp.*, 149 F.R.D. 533, 537 (N.D. Tex. 1993) (Maloney, J.) (citing *Upjohn*, 449 U.S. at 389-97). Nonetheless, "the mere existence of an attorney-client relationship or the mere exchange of information

---

[2]Because AHF brings its claims under the FHA, the court applies federal, rather than state, law of privilege. *See* Fed. R. Evid. 501; *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005).

with an attorney does not give rise to a presumptive claim of privilege." *Varo, Inc. v. Litton Sys., Inc.*, 129 F.R.D. 139, 142 (N.D. Tex. 1989) (Fitzwater, J.).

Because defendants assert the privilege, they have the burden of proving that it applies to each document that they seek to protect from disclosure. *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). Specifically, they must establish as to each document the following elements:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975) (citing *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)). Moreover, although the attorney-client privilege serves an important purpose, it also impedes the full and free discovery of truth and therefore should be strictly construed. *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) (Kaplan, J.) (citing *Perkins v. Gregg County, Tex.*, 891 F. Supp. 361, 363 (E.D. Tex. 1995)); *see also In re Grand Jury*

*Proceedings in re Fine*, 641 F.2d 199, 204 n.5 (5th Cir. Unit A Mar. 1981) ("[T]he attorney-client privilege should be confined within the narrowest limits consistent with its purpose.").

B

Defendants maintain that the disputed documents are protected by attorney-client privilege because they represent email communications between City employees and Richie, acting in her capacity as the City's assistant city attorney, i.e., its inside counsel. AHF counters that the disputed documents are not protected because they do not contain any confidential communications or legal advice.

The court concludes that certain disputed documents are subject to attorney-client privilege. These contain Richie's legal advice and opinions related to the City's response to a fair housing complaint that AHF filed with the U.S. Department of Housing and Urban Development, and confidential information provided to enable Richie to prepare the City's response. P. App. 129 (COD-ATTJ-01867) (Exhibit 19), 138 (COD-ATTJ-01837) (Exhibit 34), 142-43 (COD-ATTJ-01105 to COD-ATTJ-01106) (Exhibit 37).

The court concludes that the remaining disputed documents are not privileged.³ They do not contain an attorney's legal advice or

---

³These are identified as follows: COD-ATTJ-01979 to COD-ATTJ-01981; COD-ATTJ-01987 to COD-ATTJ-01988; COD-ATTJ-01996 to COD-ATTJ-01998; COD-ATTJ-03617; COD-ATTJ-03619 to COD-ATTJ-03620; COD-ATTJ-01954 (Exhibit 6); COD-ATTJ-01997 (Exhibit 27); COD-ATTJ-01976 to COD-ATTJ-01977 (Exhibit 30); COD-ATTJ-01941 (Exhibit 32); and

confidential client communications made to obtain such legal advice. A few concern merely logistical matters, e.g., setting the date and agenda for a meeting between AHF and the City and scheduling an inspection of AHF's apartment complex. *Id.* at 90-92 (COD-ATTJ-01979 to COD-ATTJ-01981), 93-94 (COD-ATTJ-01987 to COD-ATTJ-01988), 100-01 (COD-ATTJ-03619 to COD-ATTJ-03620). Others recount dialogue between the City and AHF, including the notes from a December 2005 meeting. *Id.* at 98 (COD-ATTJ-03617), 133-34 (COD-ATTJ-01976 to COD-ATTJ-01977) (Exhibit 30). Still others concern Richie's conversations with third parties—a community member and a City Council member—concerned about crime at AHF's apartment complex. *Id.* at 95-97 (COD-ATTJ-01996 to COD-ATTJ-01998), 127 (COD-ATTJ-01954) (Exhibit 6), 131 (COD-ATTJ-01997) (Exhibit 27). Finally, two others concern the identification of a specific Dallas City Code provision that Richie needed to reference in the draft of a repair agreement between the City and AHF. *Id.* at 136 (COD-ATTJ-01941) (Exhibit 32), 140 (COD-ATTJ-01938) (Exhibit 33). Although these relate on a general level to Richie's preparation of a legally binding agreement, there is no indication that the information provided to Richie—which consisted mainly of statutory text—was intended to be confidential. Rather, it appears that the City Code provision that was cited would simply be imported into a repair agreement that would in turn be disclosed to AHF for

---

COD-ATTJ-01938 (Exhibit 33).

purposes of entering into the agreement.

*Upjohn*, on which defendants rely, does not suggest a different outcome. In *Upjohn* a corporation's inside counsel questioned its lower-level employees in order to determine whether the company had made bribes or other illegal payments, and to advise the company accordingly. *Upjohn*, 449 U.S. at 386-87. The Supreme Court held that these communications were protected by the attorney-client privilege because they "concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice," and the communications were kept confidential. *Id*. at 394-95.

Here, defendants maintain that the email communications between Richie and other City employees are protected under *Upjohn* because they relate to matters within the employees' scope of duties and were made to enable Richie to "know the current situation" at AHF's apartments and provide legal services to the City. Ds. Resp. 7. This argument seems to suggest that *any* communications between employees and inside counsel that relate to matters within the scope of the employees' duties, and that somehow assist inside counsel in doing her job, fall within the attorney-client privilege. The court disagrees. As explained above, the privilege is to be construed in keeping with its purpose of promoting candor in the attorney-client relationship. "Accordingly

it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). It does not encompass, at a general level, every communication—regardless of content—made to inside counsel to keep her apprised of an ongoing situation regarding which she may be asked to provide specific legal advice or services. Because in-house attorneys are not retained by the client for a specific matter, they often become involved with the broader goals of the organization, "blur[ring] the line between legal and nonlegal communications." *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 592 (N.Y. 1989). This calls for careful consideration of each communication to determine whether it should be protected from disclosure to further the purpose of the privilege. Here, unlike in *Upjohn*, defendants have not established that the disputed documents identified above are related to specific legal advice or services that the City sought from Richie. Accordingly, the court holds that the documents are not privileged.

III

The court now considers whether defendants waived the attorney-client privilege as to those documents that are privileged.[4]

---

[4]The court notes that new Fed. R. Evid. 502, which addresses, *inter alia*, waiver of the attorney-client privilege, took effect September 19, 2008. *See* Fed. R. Evid. 502; Pub. L. No. 110-322,

A

AHF maintains that defendants waived the privilege because they did not object when certain disputed documents were used in Sergeant Gilstrap's deposition; several months elapsed between defendants' inadvertent production and their privilege claim; and AHF has relied on the disputed documents in developing its case and should not in fairness be made to suffer the effects of defendants' conversion to a new litigation management software program. Defendants counter that they took reasonable precautions to prevent inadvertent disclosure, e.g., marking the documents as privileged, and that the time period relevant to waiver begins when they discovered the inadvertent disclosure rather than when it occurred.

B

Generally, a party waives attorney-client privilege when it voluntarily discloses privileged communications to a third party, including an adversary in litigation. *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations, Inc.*, 251 F.R.D. 238, 244 (E.D. Tex. 2008); *Aspex Eyewear*, 2002 WL 1592606, at *3; *see also El Paso*, 682 F.2d at 539 ("To retain the attorney-client privilege, the confidentiality surrounding the communications made in that

---

§ 1(c) (2008) (providing that Rule 502 shall apply "insofar as is just and practicable, in all proceedings pending on [the] date of enactment"). The court need not address Rule 502 specifically in deciding AHF's motion.

relationship must be preserved."). The Fifth Circuit has held that "[a] client waives the attorney-client privilege . . . by failing to assert it when confidential information is sought in legal proceedings." *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).

An exception potentially applies, however, when the disclosure of privileged communications is inadvertent. *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993); *Crossroads Sys. (Tex.), Inc. v. Dot Hill Sys. Corp.*, 2006 WL 1544621, at *2 (W.D. Tex. May 31, 2006) ("The law of this circuit is clear that when privileged materials are disclosed inadvertently, the disclosure will not be deemed a waiver of privilege if certain conditions are met."). In determining whether an inadvertent disclosure effects a waiver, courts in the Fifth Circuit consider five non-exhaustive factors: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Alldread*, 988 F.2d at 1433.

C

The parties center their waiver arguments on the five *Alldread* factors. The initial question, however, is whether the disclosure here is voluntary or inadvertent. It appears to be undisputed that defendants' production of allegedly privileged documents was inadvertent. But even if the initial disclosure was inadvertent,

defendants may have engaged in other conduct that effected a waiver of the privilege. Certain disputed documents—including all those that the court has held to be privileged—were also used as exhibits at Sergeant Gilstrap's deposition and served as the basis of questioning. No privilege-based objections were made, and Sergeant Gilstrap testified regarding their contents.

*Nguyen* is instructive in deciding whether defendants voluntarily waived the attorney-client privilege with respect to these documents. In *Nguyen* opposing counsel deposed corporate executives regarding confidential communications with their lawyers. *Nguyen*, 197 F.3d at 206-07. The questioning pertained to the substance of the communications rather than simply to their general nature. Neither the executives nor the attorneys representing them objected, and the executives testified regarding the communications. *Id*. at 207. The court held that the attorney-client privilege was waived because neither the executives nor their attorneys asserted it. *Id*.

Similarly, AHF deposed Sergeant Gilstrap about several of his email communications with Richie. As in *Nguyen*, the questions pertained to the substance of the emails. AHF's counsel several times read or summarized an email and then asked Sergeant Gilstrap a question that fleshed out its meaning. *See*, *e.g.*, P. App. 118-20 (excerpt of deposition of Sergeant Gilstrap). AHF's counsel made it clear that he was inquiring about Sergeant Gilstrap's

communications with Richie, frequently mentioning her by name. *See, e.g., id.* at 120 ("Q. This is an email dated April 17th, 2006, from you to Jennifer Richie . . . . Q. Do you know what this is talking about?"). Further, two of the emails were clearly labeled as privileged under the attorney-client privilege, yet no objection was made when these documents were marked as exhibits and shown to Sergeant Gilstrap.[5] *See id.* at 121-22 (Exhibit 34); 123-24 (Exhibit 37).

In sum, the deposition questions and exhibits provided sufficient notice of the possibility that privileged documents had been produced to AHF and that information regarding privileged communications was being sought. Therefore, the court concludes that defendants voluntarily waived the attorney-client privilege.[6] *See Crossroads Sys. (Tex.)*, 2006 WL 1544621, at *2 (holding that failure to object at deposition to questions regarding privileged email document was not inadvertent where counsel should have been put on notice of the document's privileged nature).

---

[5]Additionally, a third email, Exhibit 6, was marked as an exhibit before the deposition but was also clearly labeled as privileged under the attorney-client privilege and shown to Sergeant Gilstrap without objection. *See* P. App. 112, 116.

[6]Based on this holding, the court need not address the parties' arguments based on the *Alldread* factors, e.g., reasonableness of precautions taken to prevent disclosure, and amount of time taken to remedy the error.

* * *

AHF's October 31, 2008 motion for *in camera* inspection is granted, and that court holds that the documents in question either are not privileged or that the privilege was waived. AHF may therefore retain custody of the documents that are the subject of its motion and use them in this litigation.

**SO ORDERED.**

February 12, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE